# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

FRANKLIN CHRISTOPHER
HIGGINBOTHAM,

    Plaintiff,

v.                                                Case No.  5:21-cv-62-TKW/MJF

MARK INCH, *et al.*,

    Defendants.
_____/

## SECOND REPORT AND RECOMMENDATION

On July 26, 2021, the undersigned entered a Report and Recommendation ("First R&R") recommending that this case be dismissed for Plaintiff's failure to comply with the undersigned's orders to pay the filing fee. (Doc. 13). Specifically, Plaintiff failed to comply with the undersigned's order of May 4, 2021, which required him to pay the filing fee, (Doc. 10), and he also failed to comply with the undersigned's show-cause order of June 21, 2021, (Doc. 11). Shortly after the First R&R was docketed, the clerk of the court docketed Plaintiff's response to the undersigned's show-cause order. (Doc. 14). The District Court vacated the First R&R and remanded the case to the undersigned for further consideration in light of Plaintiff's response. (Doc. 15).

The undersigned has considered Plaintiff's response and has provided him a reasonable opportunity to explain why he failed to pay the filing fee. Based on Plaintiff's submissions, the undersigned concludes that Plaintiff's failure to pay the filing fee was within his control. Specifically, Plaintiff hastily expended funds in his account by making large discretionary purchases instead of properly reserving money he owed for the filing fee. Plaintiff's actions demonstrate bad faith and warrant dismissal of this case for failure to comply with the order to pay the filing fee.

## I. BACKGROUND

Plaintiff is a Florida prisoner proceeding *pro se*. He initiated this action on March 15, 2021, by filing a civil-rights complaint under 42 U.S.C. § 1983. (Doc. 1).[1] Plaintiff's complaint named two Defendants sued in their official capacities: Mark Inch, the Secretary of the Florida Department of Corrections ("FDC"); and S. Hosseini, a doctor at Apalachee Correctional Institution. (*Id*. at 1-2). Plaintiff claimed that Defendants violated the Eighth Amendment when they were deliberately indifferent to his serious medical needs between July 6, 2018, and September 2018, during Plaintiff's confinement at Apalachee CI. (*Id*. at 3-6). As relief, Plaintiff sought $25,000,000.00 in damages. (*Id*. at 7). Plaintiff's complaint

---

[1] Plaintiff delivered his complaint to prison officials for mailing on March 10, 2021. (Doc. 1 at 36 (mailing envelope)).

was not signed and was not accompanied by the $402.00 filing fee or a motion for leave to proceed *in forma pauperis*. (Doc. 1).[2]

On March 17, 2021, the undersigned ordered Plaintiff to file an amended complaint that contained his signature, and to either pay the $402.00 filing fee or file a motion for leave to proceed *in forma pauperis*. (Doc. 3). The court provided Plaintiff thirty (30) days to comply with the order, (*id*.), and later extended that deadline to April 30, 2021. (Docs. 4, 5).

Plaintiff responded by filing an amended complaint on April 26, 2021, (Doc. 6), accompanied by a "Notice," (Doc. 7). Plaintiff's Notice stated that on April 19, 2021, Plaintiff completed a "Special Withdraw[al] Slip" requesting that $402.00 be withdrawn from his inmate trust account and forwarded to this court for payment of the filing fee. (*Id.*). The balance in Plaintiff's inmate trust account at the beginning of the day on April 19, 2021, was $1,207.17. (Doc. 9 at 7).

On April 30, 2021, Plaintiff filed in this court a motion for leave to proceed *in forma pauperis* accompanied by an inmate trust account statement for the period of October 1, 2020, to April 21, 2021. (Doc. 9). The account statement reflected that

---

[2] References to the $402.00 "filing fee" are to the $350.00 filing fee and $52.00 administrative fee for commencing this civil action. *See* 28 U.S.C. § 1914(a), (b) (Judicial Conf. Schedule of Fees, District Court Misc. Fee Schedule, ¶ 14 (eff. Dec. 1, 2020)).

Plaintiff received a $1,400.00 government "stimulus" check on April 17, 2021, and that his account balance as of April 21, 2021, was $917.31. (*Id.* at 7).

On May 4, 2021, the undersigned determined that Plaintiff had sufficient funds to pay the filing fee because his account balance was well over $402.00. (Doc. 10). The undersigned, therefore, denied Plaintiff's motion for leave to proceed *in forma pauperis* and required him to pay the full filing fee within thirty (30) days—by June 3, 2021. (*Id.*).

Plaintiff did not pay the filing fee. Accordingly, on June 21, 2021, the undersigned required Plaintiff to show cause within fourteen (14) days why this case should not be dismissed. (Doc. 11). Plaintiff's deadline to respond to the show-cause order was July 6, 2021. (*Id.*).

On July 26, 2021, having received no response from Plaintiff, the undersigned entered the First R&R recommending that this case be dismissed for Plaintiff's failure to comply with the May 4, 2021 order requiring him to pay the filing fee, and his failure to comply with the June 21, 2021 show-cause order. (Doc. 13).

Shortly after the First R&R was entered, the clerk of the court docketed Plaintiff's response to the June 21, 2021 show-cause order. (Doc. 14). In his response, dated July 19, 2021, Plaintiff does not dispute that he previously had sufficient funds to pay the $402.00 filing fee. (Doc. 14). Plaintiff maintains that the reason the fee was not paid is because FDC officials "intentionally ignored" for six

Page 4 of 14

weeks a Special Withdrawal Slip he submitted on May 21, 2021, for payment of the filing fee because they "keenly knew the funds, that were being asked to withdraw, was for the purpose of a lawsuit." (*Id*. at 1). Plaintiff claims that during this six-week delay, he "used the funds to provide for his daily necessities" and that he now has insufficient funds to pay the filing fee. (*Id*. at 2). Plaintiff requests that the District Court place a lien on his account for $350.00 and allow this case to proceed. (*Id*.).

The District Court vacated the First R&R and remanded the case to the undersigned for further consideration in light of Plaintiff's response. (Doc. 15). The District Court noted:

> If, as the documents attached to the response suggest, Plaintiff no longer had sufficient funds in his inmate trust account to pay the full filing fee, the magistrate judge may need to reconsider the order denying Plaintiff's motion to proceed *in forma pauperis*; however, that is an issue for the magistrate judge to consider in the first instance after reviewing the response and, likely, requiring Plaintiff to submit an updated inmate trust account statement showing where the money in the account went between the date of the last statement (4/21/21, *see* Doc. 9, at 7) and the date of the request for payment of the filing fee (5/12/21, *see* Doc. 14, at 5).

(*Id*. at 2.).

The undersigned ordered Plaintiff to submit an account statement for the period of April 21, 2021, to July 27, 2021. (Doc. 16). In response, Plaintiff has filed a motion for leave to proceed *in forma pauperis* accompanied by an account statement for the period of May 1, 2021, to August 30, 2021. (Doc. 19).

## II. DISCUSSION

The statutory fees for commencing a civil action in a federal district court total $402.00. *See* 28 U.S.C. § 1914(a), (b) (Judicial Conf. Schedule of Fees, District Court Misc. Fee Schedule, ¶ 14 (eff. Dec. 1, 2020)). The *in forma pauperis* statute provides that a district court "may authorize the commencement . . . of any suit . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1). The essential question is whether "the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004).

"Federal courts possess an inherent power to dismiss a complaint for failure to comply with a court order," including an order to pay the filing fee. *Foudy v. Indian River Cnty. Sheriff's Off.*, 845 F.3d 1117, 1126 (11th Cir. 2017) (citations omitted); N.D. Fla. Loc. R. 41.1 (authorizing the court to dismiss an action, or any claim within it, "[i]f a party fails to comply with an applicable rule or a court order"). Particularly with regard to prisoner complaints, the Eleventh Circuit has held that "a prisoner's complaint should not be dismissed where his 'failure to pay his filing fee may be caused by circumstances beyond his control.'" *Bourassa v. Dozier*, 832 F. App'x 595, 597-98 (11th Cir. 2020) (quoting *Wilson v. Sargent*, 313 F.3d 1315,

1321-22 (11th Cir. 2002)). A district court, therefore, "must take reasonable steps . . . to determine whether a prisoner has complied with an order directing the payment of fees" before dismissing the complaint. *Id.* at 598. "When [the p]laintiff's own statements prove that he did not comply with a court order and that compliance was within his control, no further investigation is needed." *Walker v. Powell*, 351 F. App'x 384, 386 (11th Cir. 2009).

The record in this case confirms—and Plaintiff does not dispute—that he had sufficient funds to pay the filing fee. After the undersigned issued the order of March 17, 2021, which required Plaintiff to pay the filing fee or move for leave to proceed *in forma pauperis*, (Doc. 3), Plaintiff received a $1,400.00 "stimulus" check on April 17, 2021. (Doc. 9 at 7). Plaintiff submitted a Special Withdrawal Slip to prison officials on April 19, 2021, authorizing payment of the $402.00 filing fee. (Doc. 7 at 1). At that time, Plaintiff had $1,207.59 in his inmate account. (Doc. 9 at 7).

Despite having sufficient funds, Plaintiff also moved for leave to proceed *in forma pauperis*. (Doc. 9). His account statement at that time reflected a balance of $917.31. (*Id*. at 7). The undersigned denied Plaintiff leave to proceed *in forma pauperis* on May 4, 2021, finding that Plaintiff had sufficient funds to pay the filing

fee. (Doc. 10). The undersigned properly denied Plaintiff leave to proceed *in forma pauperis*.[3]

A. **Plaintiff's Failure to Pay the Filing Fee Was Caused by His Bad-Faith Spending and Not by Circumstances Beyond His Control**

Plaintiff claims that his failure to pay the filing fee was caused by prison officials' deliberate, unreasonable delay in processing his Special Withdrawal slips until he had used all of his money to pay for "daily necessities." (Doc. 14 at 1-2; Doc. 19 at 1). Although the Eleventh Circuit has said that "proof of authorization of payment ordinarily confirms that the failure to pay was not the fault of the prisoner, but rather the result of inaction by prison officials or a lack of funds in the account," *Wilson*, 313 F.3d at 1321, the printouts of transactions in Plaintiff's inmate trust account establish that that is not the case here, (*See* Doc. 9 at 7; Doc. 19 at 10).

Plaintiff's failure to pay the filing fee—and his failure to comply with the order requiring him to do so—was not caused by circumstances beyond his control, but by his own actions. As detailed below, immediately after Plaintiff authorized payment of the filing fee—and before giving the FDC a reasonable time to process his Special Withdrawal slips—Plaintiff spent down his account by making large,

---

[3] Plaintiff's later account statement reflects that by May 4, 2021, Plaintiff already had spent his account down to $566.28, but that still was enough money to pay the filing fee. (Doc. 19 at 10).

almost-daily purchases of canteen items, entertainment, and other non-essential goods, until he no longer had sufficient funds to fulfill his Special Withdrawal slips.

Plaintiff submitted his first Special Withdrawal Slip on April 19, 2021. (Doc. 7 at 1). At that time, his account balance was $1,207.59. (Doc. 9 at 7). Between April 19, 2021, and May 11, 2021—a period of only 22 days—Plaintiff spent *over* $554.79 on canteen items and media. (Doc. 9 at 7; Doc. 19 at 10).[4]

After the undersigned denied his motion for leave to proceed *in forma pauperis*, Plaintiff submitted another Special Withdrawal Slip on May 12, 2021, to pay the filing fee. (Doc. 14 at 1, 5). At that time, he had $499.07 in his inmate account. (Doc. 19 at 10). Instead of retaining those funds for a reasonable time to allow the FDC to process his Special Withdrawal Slip, Plaintiff immediately spent another $278.05 between May 12, 2021, and May 17, 2021, on media and goods from the "Access Catalog," thereby bringing his account balance down to $220.02

---

[4] This is the *minimum* amount Plaintiff spent on canteen items and media during this 22-day period. The undersigned ordered Plaintiff to submit an account printout from April 21, 2021 through July 27, 2021, (Doc. 16), but the printout Plaintiff provided has a gap of 10 days between April 21, 2021 and May 1, 2021. During that 10-day period, Plaintiff's account balance declined by an additional $251.32 (from $917.31 to $665.99). (*See* Doc. 9 at 7; Doc. 19 at 10). Plaintiff has not provided any evidence regarding the nature of his expenditures during this period. Including the unaccounted-for $251.32, Plaintiff's account balance dropped by $806.11 during the 22-day period.

in just 5 days. (*Id.*).⁵ On May 19, 2021, Plaintiff spent another $199.92 on canteen items and media, which brought his account balance down to $20.10. Thus, within one week of submitting his May 12, 2021 Special Withdrawal Slip, Plaintiff had spent $477.97 on discretionary expenditures to the point where he had only $20.10 left in his inmate account.

Plaintiff does not allege that he ever sought to confirm the status of the Special Withdrawal slips or that prison officials misled him to believe that the filing fee had been paid. *See Lucien v. DeTella*, 141 F.3d 773, 776 (7th Cir. 1998) ("If . . . the prison fails to make the required distribution from the trust account, the prisoner should notice this and refrain from spending the funds on personal items until they can be applied properly."). Even accepting as true Plaintiff's allegation that his May 12, 2021 Special Withdrawal Slip was returned six weeks later for lack of proper signature, (Doc. 19), that delay was not the cause of Plaintiff's failure to pay the filing fee. Plaintiff already had spent his account down to below $402.00 by May 17, 2021.

---

⁵ Access Catalog Company, LLC offers "over 1,000 products, including many name brand items and products specifically designed for the corrections market." *See Package Products*, Access Securepak, https://www.accesscatalog.com (last visited Oct. 6, 2021).

**B.      Plaintiff's Failure to Comply with the Order to Pay the Filing Fee Warrants Dismissal of this Case**

Plaintiff had sufficient funds to pay the $402.00 filing fee, and his failure to pay the filing fee was within his control. Although Plaintiff initiated the process to pay the filing fee, he quickly disabled himself—within 28 days—by purchasing canteen items, media, and other goods *before* allowing the FDC a reasonable time to process his Special Withdrawal slips (and without first confirming that his filing fee had been paid). Plaintiff spent down his account balance from $1,207.59 (on April 19, 2021), to $220.02 (by May 17, 2021), knowing that $402.00 was required to pursue this lawsuit.

The nature and timing of Plaintiff's withdrawals indicate that they were intended to avoid his obligation to pay the filing fee, and that he valued snacks, media, and other comfort items over pursuing this litigation. Plaintiff, of course, enjoys the freedom to spend his money as he sees fit, but he must accept the consequences of his decisions. Plaintiff's actions do not excuse his failure to pay the filing fee and his failure to comply with the order to do so. *Cosby v. Meadors*, 351 F.3d 1324, 1327 (10th Cir. 2003) ("[W]hen a prisoner has sufficient income to pay [the] filing fee and instead spends his money on amenities at the prison canteen, he cannot be excused for failing to make the required . . . payment[ ].").

An appropriate sanction for Plaintiff's failure to comply with the order to pay the filing fee is to dismiss this case without prejudice. *See Wilson*, 313 F.3d at 1321

n.7 ("If the court determines that [the prisoner] is unable to pay the partial filing fee at the time of collection because he intentionally depleted his account to avoid payment, the court in its sound discretion may dismiss the action.") (citing *Collier v. Tatum*, 722 F.2d 653, 655-56 (11th Cir. 1983)); *see also Walker*, 351 F. App'x at 386 (dismissing prisoner's complaint for failure to comply with court order to make monthly partial filing fee payments where prisoner's account statements demonstrated that he used the funds for canteen purchases instead of filing fee payments); *Lucien*, 141 F.3d at 774-76 (dismissing prisoner's complaint where prisoner had the money to pay an $18 initial partial filing fee assessed by the district court, but "thought clothing and sundries more valuable than continued pursuit of litigation"; noting that during the two months following the court's assessment of the partial filing fee, the prisoner "bought underwear, shirts, pants, towels, gym shoes, pens, ear plugs, toothpaste, writing paper, stamps, and other sundries, leaving a balance of 29¢ on the date he told the judge that he could not afford $18."); *Lumbert v. Ill. Dep't of Corr.*, 827 F.2d 257, 260 (7th Cir. 1987) ("A suit not worth $7.20 to an inmate who could pay this fee is unlikely to be worth the time of the courts. If the inmate thinks that a more worthwhile use of his funds would be to buy peanuts and candy (two of the items that, the record shows, Lumbert has purchased from the prison commissary) than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor."); *Cosby*, 351 F.3d

at 1327 (dismissing prisoner's complaint for failure to make required partial filing fee payments; "If Plaintiff had in fact directed the prison to make the required payments and the prison had failed to do so, it was still Plaintiff's obligation to notice this lapse and not spend the money until the required payments were made to the court." ).

### III.  CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. This case be **DISMISSED** without prejudice for Plaintiff's failure to comply with this court's order requiring him to pay the filing fee.[6]

2. The clerk of court be directed to close this case file.

At Pensacola, Florida, this 6th day of October, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

---

[6] Dismissal of this case without prejudice would not preclude Plaintiff from promptly initiating a new civil action insofar as the events giving rise to this lawsuit allegedly occurred from July through September 2018. (*See* Doc. 6 at 3).

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**